IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHELTON L. BONDS | § | |
| (TDCJ No. 1953652), | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:18-cv-1299-K-BN |
| | § | |
| LORIE DAVIS, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Shelton L. Bonds, a Texas inmate, filed a *pro se* application for writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt. No. 3. This resulting action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ed Kinkeade. The State filed a response opposing relief, Dkt. No. 13, to which Bonds filed a reply. Dkt. No. 20. Pursuant to an order from this Court, Dkt. No. 22, the state filed a supplemental response, Dkt. No. 23, to which Bonds filed a reply. Dkt. No. 24. For the reasons explained below, the Court should deny Bonds's federal habeas petition.

**Applicable Background**

After finding Bonds guilty of possession with intent to deliver cocaine in an amount of 400 grams or more, the jury "assessed punishment at fifty-four years' imprisonment and a $35,000 fine." *Bonds v. State*, No. 05-14-01227-CR, 2016 WL

1

3577343, at *1 (Tex. App. – Dallas June 27, 2016, pet. ref'd.); *see State v. Bonds*, No. 2–12–255 (382nd Jud. Dist. Ct., Rockwall Cty., Tex.). The Dallas Court of Appeals affirmed the trial court's judgment. *See Bonds*, 2016 WL 3577343, at *1 , at *5. The Texas Court of Criminal Appeals ("CCA") refused Bonds's petition for discretionary review on December 14, 2016. *See Bonds v. State*, No. PD-859-16, (Tex. Crim. App. 2016).

Bonds filed a state application for writ of habeas corpus, claiming that his trial counsel was constitutionally ineffective on numerous issues. *See* Dkt. No. 12-4 at 7-26. Additionally, Bonds alleged that the cumulative effect of his counsel's errors denied him a fair trial and effective assistance of counsel and that his conviction violated the double jeopardy clause of the Constitution. *See id.* at 18, 23. On March 21, 2018, the CCA denied Bonds's application without written order. *See Ex parte Bonds*, WR-86,786-01 (Tex. Crim. App. March 21, 2018); Dkt. No. 11-20.

In his timely-filed federal habeas application, Bonds raised the same grounds for relief that he raised in his state application. *See* Dkt. No. 3 at 6-8. On the same date that the Court issued the Magistrate Judge's Findings, Conclusions, and Recommendation, the Court received Bonds's *Motion for Permission to Refile his Traverse to the State's Response*, in which he averred that he had previously timely-submitted his Travers, but that it "ha[d] never been filed by the district clerk." *See* Dkt. No. 18. The Court found that "although the Court granted Bonds's motion for an extension of time to file a reply on October 11, 2018 . . . no reply was filed." *See* Dkt.

No. 19 at 1. However, in the interest of justice, the Court granted Bonds's request to file a traverse and withdrew the previously-filed *Findings, Conclusions, and Recommendation of the United States Magistrate Judge. See* Dkt. No. 19. Pursuant to permission by the Court, the Government filed a supplement response, *see* Dkt. No. 23, to which Bonds filed a reply. *See* Dkt. No. 24.

## Legal Standards and Analysis

I.     Claims

Bonds raises five claims of ineffective assistance of counsel, a claim that cumulative errors of his counsel denied him a fair trial, and a claim that his conviction violates the double jeopardy clause of the Constitution. *See* Dkt. No. 3 at 6-8.

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be

"examine[d] ... with the deference demanded by [the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ...

could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon." (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

5

comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. §

2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Richter*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *cf. Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

That is, a Section 2254 petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on

to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

    A.    <u>Ineffective Assistance</u>

    Bonds makes five claims of ineffective assistance of counsel. Specifically, Bonds argues that his counsel was ineffective by (1) failing to challenge a veniremember at voir dire, (2) failing to request the jury be given the definition of "reasonable suspicion," (3) failing to object to a jury instruction on the illegality of marijuana, (4) failing to challenge the reason given by the police officer for the traffic stop, and (5) failing to object to the State's presentation of evidence of "the drug epidemic on a national level." Dkt. No. 3 at 6-8. He also alleges that the cumulative effect of his counsels errors denied him a fair trial and effective assistance of counsel. *See id.* at 8.

    The Court reviews claims concerning the alleged ineffective assistance of counsel ("IAC"), whether at trial or on direct appeal, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See id.* at 687-88. A petitioner must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 775

(2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)).

The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to

affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. If a petitioner fails to demonstrate prejudice, an inquiry into counsel's performance becomes unnecessary.

*See Strickland*, 466 U.S. at 697.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective assistance of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland. See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's

determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. ____, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'") (quoting *Burt*, 571 U.S. at 22, 15); *Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

Bonds claims that his counsel was ineffective for "failing to challenge for cause venireman [Sanches] after he expressed a bias against the law in regard to a state statute relevant in petitioner's defense." Dkt. 3 at 6. During Voir Dire, the following exchange took place between Bonds's counsel and the jury pool:

> VENIREPERSON ROSENBARGER: Yeah. I guess there's been a lot of discussion about these cop shows and somebody getting off on a technicality, and I agree 100 percent.
>
> [BONDS'S COUNSEL]: That people should not get off on technicalities?
>
> VENIREPERSON ROSENBARGER: Right.
>
> [BONDS'S COUNSEL]: Okay. We' re going to come

back to that concept. Right now everybody just raise your
hand on that –

(Hand raised. )

. . . .

[BONDS'S COUNSEL]: Okay. Third row, Mr. Selensky has

his hand raised. **Mr. - - tell me your name again, sir.**

**VENIREPERSON SANCHES: Sanches.**

**[BONDS'S COUNSEL]: Mr. Sanches has his hand
raised. okay.** On the third row, left-hand my
left-hand side, is it Windell?

Dkt. No. 11-6 at 12-13 (emphasis added).

Bonds claims that his counsel provided ineffective assistance by not striking

Sanches from the jury pool based on the above-exchange during voir dire. However,

Bonds fails to demonstrate that he was prejudiced by Sanches's presence on the jury.

He states that he "was tried by at least one juror who was not qualified to sit on his

trial. Trial counsel's deficient performance undermines confidence in the impartiality

of Sanches and undermines confidence in the outcome of the trial." Dkt. No. 24 at 2.

This general statement fails to "affirmatively prove" that he was prejudiced by

Sanches's presence on the jury. This is insufficient. *See Strickland*, 466 U.S. at 693.

Bonds attempts to support his claim by analogizing his claim with the Fifth

Circuit decision in *Virgil v. Drekte*, 446 F.3d 598. This is unpersuasive, however, as the

facts in *Virgil* are significantly more egregious than the ones present in Bonds's case.

In *Virgil*, two venirepersons, who were ultimately chosen to serve as jurors

13

responded in the following manner on voir dire:

> [DEFENSE]: So therefore you could not serve as an impartial juror in this case?
>
> [VENIREMAN 16]: Perhaps not.
>
> [DEFENSE]: Is your answer no or yes?
>
> [VENIREMAN 16]: I would say no.
>
> ....
>
> [DEFENSE]: Would this cause you to be a juror who could not be fair and impartial in this case?
>
> [VENIREMAN 17]: Yeah, I believe so.
>
> [DEFENSE]: All right. Not believe or is it so?
>
> [VENIREMAN 17]: I said: Yes, I do believe so.

*Virgil*, 446 F.3d at 601, 603-04. The Fifth Circuit found that Virgil was prejudiced by the two jury members because they had "unequivocally expressed bias against Virgil." *Id.* at 614. That is not the case with Sanches. Sanches simply silently raised his hand in agreement to the general statement that "people should not get off on technicalities." *See* Dkt. No.11-6 at 12-13. Thus, the holding in *Virgil* does not assist Bonds.

Because Bonds has failed to show a substantial likelihood that, had his trial counsel stricken venireperson Sanches from the jury, the result of his trial would have been different, this claim should be denied. *See Richter*, 562 U.S. at 112.

Bonds claims that his counsel also provided ineffective assistance by "fail[ing] to request that the jury be provided with the definition of 'Reasonable Suspicion' in the jury charge." Dkt. No. 3 at 6. However, in the state habeas proceeding, Judge Brett

Hall, who was also the presiding judge at Bonds's trial, stated:

> From the recollection of the trial proceedings, this Court further concludes that there was no conflict in the evidence that raised a disputed fact issue material to the legal question of "reasonable suspicion" as it related to the stop. Therefore, a definition of "reasonable suspicion" was not warranted in this Court's jury charge for the guilt-innocence phase, and the trial counsel's performance did not fall below an objective standard of reasonableness in not requesting such a definition.

Dkt. No. 12-2 at 7. From Judge Hall's statement, it is evident that had Bonds's counsel requested a jury instruction on the definition of 'reasonable suspicion,' it would have been denied. Counsel is not ineffective for failing to make frivolous or futile motions or objections. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir.2002); *Koch v. Puckett*, 907 F.2d 524,  527 (5th Cir. 1990).

Furthermore, Bonds has failed to show he was prejudiced. In faulting his counsel for failing to request the jury be given this definition, Bonds avers that the omission "confused the jury into believing that reasonable suspicion equated to probable cause to search." Dkt. No. 3 at 6; Dkt. 20 at 4. In support for this claim, Bonds refers to the note the jury sent to the trial court during deliberations. *See* Dkt. No. 20 at 5. The jury had been given an instruction regarding the definition of 'Probable Cause' prior to deliberations. *See* Dkt. No. 11-2 at 82; Dkt. No. 11-8 at 11. The instruction immediately prior to that instructed the jury that, during a traffic stop, if an officer "acquires probable cause to believe, and does believe that a vehicle contains an illegal substance, he may thereupon search the vehicle for illegal substances." *Id*.   During the deliberations, the note that the jury sent out stated:

> Is probable cause in this case based solely on Officer Ellis'
> recognizing smell of marijuana or can inconsistencies in
> Allen's and Bonds's replies to Officer Ellis affect the
> probable cause? Can you clarify the reading of the law on
> 'probable cause'?

Dkt. No. 11-2 at 89. Bonds argues that the jurors' note is "evidence that [his] counsel's failure to request that the Charge include the definition of reasonable suspicion had an adverse effect on the jurors' deliberations, and thus the verdict," and "clearly demonstrated [the jury's] confusion as to the relevant difference between reasonable suspicion and probable cause." Dkt. No. 20 at 5. Bonds' statements in this regard, however, do not make it so. A straight-forward reading of the jury's question indicates that they were requesting assistance in determining the factual bases for demonstrating whether the officer had probable cause to search the vehicle. Bonds has failed to demonstrate a substantial likelihood that, had his counsel requested a jury instruction on the definition of 'reasonable suspicion', the results of his proceedings would have been different. Thus, he has failed to show his counsel provided ineffective assistance on this ground. *See Richter*, 562 U.S. at 112.

Next, Bonds claims his counsel provided ineffective assistance by "fail[ing] to object to the mandatory presumption contained in the jury Charge." Dkt. No. 3 at 7; Dkt. 20 at 8. The jury instruction Bonds contests stated:

> You are instructed that after a stop has been made for a
> traffic offense, if the police officer during the stop acquires
> probable cause to believe, and does believe that a vehicle
> contains an illegal substance, he may thereupon search the
> vehicle for illegal substances. You are instructed that under
> Texas law marihuana is an illegal substance.

16

Dkt. No. 11-2 at 81-82; Dkt. No. 20 at 8-9. As an initial matter, the charge that Bonds complains of does not contain a mandatory presumption. A mandatory presumption "relieves the State of its burden of persuasion by removing the presumed element from the case entirely if the State proves the predicate facts." *Frances v. Franklin*, 471 U.S. 307, 317 (1985); *see also County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 157 (1979) (stating that a mandatory presumption requires that a jury "must find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts."). Here, the jury charge Bonds complains of merely explains when an officer may properly search a vehicle for illegal substances. Contrary to Bonds's argument, *see* Dkt. No. 20 at 9, the section of the charge stating that "under Texas law marihuana is an illegal substance," does not create an unconstitutional mandatory presumption. In the context of the charge – acquiring probable to search a vehicle – even the odor of an illegal substance provides probable cause for the search of a vehicle. *See United States v. Ibarra-Sanchez*, 199 F.3d 753, 760 (5th Cir. 1999) (stating that "the smell of marihuana alone may constitute probable cause to search a vehicle"); *see also United States v. Lork,* 132 F. App'x 34, 35 (5th Cir. 2005) (stating "a detectable odor of marijuana emanating from a vehicle provides probable cause for the search of a vehicle").

Additionally, as with the previous claim, any objection to the jury charge at issue would have been futile. During the habeas proceeding, the trial judge – Judge

17

Hall – stated:

> This Court concludes that any objection on "mandatory presumption" would not be valid, and that the trial counsel's performance did not fall below an objective standard of reasonableness in not raising such an objection.

Dkt. 12-2 at 7. Thus, Bonds's trial counsel was not ineffective for failing to make a frivolous or futile objection. *Johnson*, 306 F.3d at 255; *Koch*, 907 F.2d at 527.

Further, Bonds fails to demonstrate prejudice. He states that "the instruction inferring that "any amount" of marijuana, including residue, was illegal under Texas law . . . had a negative effect on the outcome of the trial." Dkt. No. 20 at 9. But he fails to cite to any evidence from the record to support this claim. Bonds fails to "affirmatively prove" that he was prejudiced by his counsel's alleged deficient act. This is insufficient. *See Strickland*, 466 U.S. at 693. He has failed to show a substantial likelihood that, had his trial counsel objected to the jury charge, the result of his trial would have been different. Thus, this claim should be denied. *See Richter*, 562 U.S. at 112.

Bonds claims that his trial counsel was ineffective for "failing to challenge the unconstitutionality of the state's 'Domestic Highway Enforcement Program' ("DHEP") Traffic stops. Dkt. No. 3 at 8; Dkt. No. 20 at 11. The arresting officer described the DHEP, at trial, as "traffic stops [on] the interstate for . . . traffic violations [where the officer] just asks a few more general questions . . . . [to get an] indication that might mean to us that there's criminal activity afoot." Dkt. No. 11-6 at 53.

Bonds appears to weave back and forth between the argument that the DHEP

18

itself is unconstitutional, Dkt. No. 20 at 11, and that the DHEP, as applied to his traffic stop was unconstitutional. Dkt. No. 24 at 7. Whichever the case, Bonds's claim of ineffective assistance on this issue is should fail. Regardless of his argument concerning his counsel's failure to challenge the DHEP, he fails to demonstrate how he was prejudiced by his counsel's alleged failure. Bonds states that ""[t]rial counsel's failure to move to suppress the drug evidence based on the design and 'purpose' of the DHE[P] stops to detain passengers and drivers along the highway beyond the scope of the "reason" for the stop harmed Bonds. The trial Court would have committed reversible error in not sustaining his motion to suppress." The Court first notes that Bonds has provided no evidence that the DHEP, as a program, has been ruled unconstitutional by the Supreme Court. Additionally, Bonds's counsel moved to suppress the drug evidence based on an illegal detention following the traffic stop, *see* Dkt. No. 11-7 at 5-13, which the trial court denied. *Id*. at 13.

Further, the trial judge also addressed this issue during Bonds's state habeas proceedings. Judge Hall stated that "[t]his Court concludes that any objection on "purpose" of the traffic stop as unconstitutional would not be valid, and that the trial counsel's performance did not fall below an objective standard of reasonableness in not raising such an objection." Dkt. No. 12-2 at 7. Bonds's trial counsel was not ineffective for failing to make a frivolous or futile objection. *Johnson*, 306 F.3d at 255; *Koch*, 907 F.2d at 527.

Bonds fails to "affirmatively prove" that he was prejudiced by his counsel on this issue. This is insufficient. *See Strickland*, 466 U.S. at 693.

19

Bonds argues his counsel was ineffective at sentencing for "failing to object to the State introducing evidence concerning the drug epidemic on a national level." Dkt. No. 3 at 8; Dkt. No. 20 at 12. He claims that the evidence "was designed to inflame the passions of the jurors and blame Bonds for the national drug epidemic and for unrelated crimes." *Id.*

The court first notes that at the punishment phase of trial, the arresting officer provided further testimony on the purpose of the DHEP, and stated that the program "is not just something we do here local, but its something that is done all over the United States." Dkt. No. 11-8 at 40. He then stated that certain facets of the police departments drug interdiction efforts were funded by a grant from the Internal Revenue Service, "because [drug offenses are] an epidemic." *Id.* at 41. As the officer began to testify about further specifics of the DHEP and area "stash houses," Bonds's counsel objected "to the relevance of this line of questioning," which prompted the prosecutor to state she would "rephrase the question. *See Id.* at 42. Thus, bonds's counsel did not fail to object as he argues.

Further, "[i]n the state sentencing context, the relevant inquiry is whether, absent counsel's errors, there is a reasonable probability that the defendant's sentence would have been 'significantly less harsh,' taking into account 'such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances." *Dale v. Quarterman*, 553 F. 3d 876, 880 (5th Cir. 2008) (internal citations omitted). Bonds's

sentencing range was "for any term of not less than 15 years nor more than 99 years, or life." Dkt. 11-8 at 52. He was ultimately sentenced to fifty-four years' incarceration. *Id.* at 62; 11-2 at 90, which signifies a mid-range sentence. While Bonds's counsel argued he should receive a fifteen-year sentence, in part, because his co-defendant received a five-year sentence, *see* Dkt. No. 11-8 at 57, Bonds's co-defendant received a five-year sentence pursuant to a plea deal with the government. *See id.*; *see also* Dkt. No. 11-7 at 35. Bonds chose to go to trial. Bonds does not cite to any other mitigating evidence that his counsel could have presented during the sentencing phase. *See* Dkt. No. 3 at 8; Dkt. No. 20 at 12. Because Bonds fails to "affirmatively prove" that he was prejudiced by his counsel's alleged deficient performance on this issue, his argument is insufficient. *See Strickland*, 466 U.S. at 693.

Bonds alleges that he "suffered prejudice due to the cumulative effect of trial counsel's multiple errors, as described [in his Section 2254 petition]." Dkt. No. 3 at 8; *see also* Dkt. No. 20 at 13. The Fifth Circuit has held that "[f]ederal habeas relief is only available for cumulative errors that are of a constitutional dimension." *Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007) (citing *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997). Because Bonds fails to establish that his counsel provided ineffective assistance under *Strickland*, regarding any of his IAC claims, he has not identified any errors of constitutional dimension. Thus, this claim can provide no relief. *See id.*

Further, Bonds raised these IAC issues in his state habeas petition. Because the

21

state habeas court's decision to deny relief did not involve an unreasonable application of *Strickland*, Bonds's § 2254 petition should be denied. Bonds fails to show that his counsel's performance was ineffective.

Bonds also fails to show that the state-court decision was unreasonable by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Bonds fails to show there was no reasonable basis for the state court to deny relief. *See Richter*, 526 U.S. at 98.

B. Double Jeopardy

Bonds claims that his conviction violated the double jeopardy clause of the Constitution because he was previously convicted of the same offense in federal court. *See* Dkt. No. 3 at 7; Dkt. No. 20 at 10. "The Double Jeopardy Clause, applied to the States through the Fourteenth Amendment, provides that no person may be tried more than once 'for the same offence.'" *Currier v. Virginia*, 138 S.Ct. 2144, 2149 (2018). Bonds states that, "in the State prosecution, [Bonds] was convicted under the State's conspiracies statutes (law of parties) for possession with intent to deliver a controlled substance" and that he "had already been convicted in federal court for the same offense based on the same drugs." Dkt. No. 3 at 7; *see also* Dkt. No. 20 at 10. He refers to "Ground Four of State Writ." *Id*. In ground number four of his state writ, Bonds argues that because he "had already been tried and convicted and punished for the

same drugs in Federal Court prior to his trial in Rockwall County," he is "entitled to a judgment of acquittal on double jeopardy." Dkt. No. 12-4 at 18.

A review of the record shows that, on March 18, 2014, Bonds was convicted in the U.S. District Court for the Western District of Tennessee for a federal drug conspiracy offense. *See id.* at 28. But individual states and the United States are separate sovereigns and are permitted to independently bring separate prosecutions to vindicate their own interests under the dual sovereignty doctrine. *See United States v. Angleton*, 314 F.3d 767, 771–74, 776 (5th Cir. 2002). Therefore, Bonds's state court conviction, subsequent to his conviction in federal court, did not violate the double jeopardy clause. *See id.*

Bonds cites to the U.S. Supreme Court case, *Barkus v. Illinois*, 359 U.S. 121 (1959), in support of his claim. However, *Barkus* is of no benefit to Bonds. In *Barkus*, the petitioner was tried in federal court for robbery of a federally insured savings and loan association, and was acquitted. *See id.* at 121-22. He was subsequently tried by the state of Illinois on "substantially identical [facts as] those contained in the prior federal indictment." *Id.* at 122. The Supreme Court held that the subsequent state court trial, based on the same acts as alleged in the federal trial, did not deprive the petitioner of due process under the Fourteenth Amendment. *See id.* at 138.

Further, Bonds raised a double-jeopardy claim in his state habeas application, *see* Dkt. No. 12-4 at 18, which the CCA denied, *see* Dkt. No. 11-20. And Bonds fails to show the state court proceedings resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See Williams*, 529 U.S. at 402-03; *Childress* v. Johnson, 103 F.3d 1221, 1224-25 (5th Cir. 1997).

As such, Bonds has not shown that there was no reasonable basis for the state court to deny relief. *See Richter*, 526 U.S. at 98.

## Evidentiary Hearing

Finally, Bonds requests an evidentiary. *See* Dkt. No. 24 at 10. But "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181; *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same as to factual determinations under section 2254(d)(2)). Here, as in *Pinholster*, Bonds only alleges non-defaulted claims under section 2254(d)(1) that were adjudicated on the merits in state court. As such, he cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court and is not entitled to an evidentiary hearing.

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 3, 2019

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE